## No. 92.

### MR. AND MRS. A. H. BROWN v. D. B. PENN ET ALS.

1. The action against a Recorder of Mortgages, for furnishing a false certificate, arises ex contractu and not ex delicto.
2. Hence, the prescription of one year does not apply.
3. Where a bill of exceptions is taken to evidence, going to establish a particular fact, and later the fact itself is admitted, this Court will not consider the bill.
4. In an action for the recovery of a community debt, brought in the name of the husband and wife, that of the latter is mere surplusage.
5. One who holds the legal title to an obligation may bring suit upon it for the benefit of another.
6. There is no law prohibiting the placing of a community asset in the name of the wife.

---

7. A husband may demand, upon a debt due the community, a decree in his wife's favor.

8. A purchaser under defective title, but not negligent, or in bad faith, will be allowed to recover against the Recorder, whose error was the cause of the loss, in addition to the price he has paid, the repairs made upon the property, and expenses incurred in defending his title.

9. It is no defense to such an action against the Recorder, to show that by paying an additional sum, the deceived purchaser might have quieted his title. Such purchaser was under no obligation to make such further disbursement.

10. An exception, or objection, is not waived or destroyed by a subsequent admission of facts going to establish the verity of such objection, or exception.

*Appeal from the Fourth District Court, Parish of Orleans.*
*Houston, Judge.*

*Guy Duplantier* for plaintiff.

*T. H. Kennedy* and *C. L. Walker* for defendants, appellants.

ROGERS, J.—On the 29th of December, 1877, Mrs. Ellen J. Decker, wife of Henry B. Mills, purported, by public act before F. J. Laiser, notary public, to convey to Mrs. Sarah Magdalina Phister, wife of A. H. Brown, certain real estate in this city. As required by law, application was made to D. B. Penn, Register of Conveyances, for the certificate of non-alienation by the vendor, Mills' wife, and the said register furnished a certificate declaring, as provided by law, that it did not appear from the records of the conveyance office; that the said Mrs. Mills had ever alienated the said property. This certificate was untrue; it should have declared that the said Mrs. Mills had, by an act before W. B. Kleinpeter, a notary, dated 29th March, 1876, sold, by a " *vente à réméré,*" this identical property to one Mrs. Snowden; that that sale was duly registered in the conveyance office, book 108, folio 367, and that said registry existed on December 29, 1877, when the improper certificate was furnished Laiser, the notary, who executed the act of sale to these plaintiffs. This error is imputed by defendant's counsel to either " the press of business, or inadvertence or ignorance of some deputy clerk."

Under the conditions of the sale to Mrs. Snowden, vendors were granted the right of redemption, i. e., within one year, on the payment of $220.00; within two years for $240.06; within three years for $266.20; within four years for $292.80, and within five years for $322.10; so that at the date of the purported sale to these plaintiffs, their vendor, Mrs. Mills, had not lost her right to redeem on payment of a sum of $266.20.

The price of sale agreed upon between plaintiffs and their vendor was $450. Three hundred and seventy-five dollars in cash and the balance, seventy-five dollars, to be paid within twelve months, with eight per cent interest, and represented by a promissory note identified with the act of sale.

Almost immediately thereafter plaintiffs took possession of this property and commenced reparations; a few days thereafter Mrs. Snowden notified them of her title by letter, and several notes of an indefinite character were sent in reply by a clerk in the office of the Register of Conveyances; the date of these notes is the 9th; the repairs were begun on the 5th, and about 17th January the plaintiffs moved in. On 9th February following, legal proceedings were instituted by Mrs. Snowden, and in the month of June judgment was rendered in favor of Mrs. Snowden, dispossessing these plaintiffs.

The amount in damages claimed is $992.13, representing as a total the following items:

1—The purchase price..........................$450 00
2—The cost of improvements.................... 75 00
3—The cost of repairs......... ................ 54 95
4—Insurance .................................. 7 88
5—Removal to new house....................... 8 00
6—Notary's fees.............................. 10 00
7—Costs incurred in defending title............. 85 80
8—Sheriff's costs............................. 20 50
9—Counsel fees............................... 50 00
10—Curator ad hoc............................. 25 00
11—Copy of act of sale........................ 5 00
12—Loss of time, etc., attending court........... 200 00

There was judgment against defendants for the sum of six hundred and ninety-seven dollars and eighteen cents, with legal interest from judicial demand.

The defenses upon which we are called to pass are—

1st. The prescription of one year.

2nd. That there was no plaintiff in court with a cause of action; because there was no capacity shown in the wife to sue, the debt being due to the community of acquets and gains.

3rd. That the damages, if any, must be restricted to the purchase price actually paid or the amount required for the redemption, under the conditions of the act of sale to Mrs. Snowden ; and

4th. It is urged on appeal that the judgment *a quo* should be set aside as *ultra petitionem*, being in favor of Brown and his wife, when it should have been as prayed for, in favor of the wife only.

Damages resulting from a failure of official duty, with reference to the specific performance of a particular act required of the officer, and which the law authorizes him to perform, do not arise *ex delicto;* the relations which grow out of the employment and the nature of the service to be performed by an officer charged by law with the duty of preserving evidences of title and certifying truthfully in connection therewith whenever called upon, as required in this case, by a peremptory law, are in the nature of contracts: for a fee imposed by law, the register agrees to certify the facts as they appear of record in his office, whenever legally required to do so.

" Certain obligations are contracted without any agreement. * * * * * Some are imposed by the sole authority of the laws." La. Rev. C. C. 2292.

Chief Justice Marshall, in Ogden vs. Saunders, 12 Wheat., p. 341, says : " A great mass of human transactions depend upon implied contracts, which are not written, but grow out of the acts of the parties."

In Brigham, Curator, *v.* Bussey, 26 La. An. 677, a suit against

the recorder of the parish of Morehouse for a failure in not reinscribing a judgment within the proper time, as specially instructed to do, the court says :

"In our opinion, the action is one *ex contractu* * * * the law made it his duty to reinscribe the judgment when duly called on to do so. * * * * We concur in the opinion that Marcadé has 'developed the distinction between damages *ex delicto* and damages *ex contractu* with his usual brevity and felicity ; the former flow from a violation of a general duty, the latter from a breach of a special obligation.' It was the general duty of the recorder to do right—not to discharge the duties of his office in a violent or oppressive manner to obey the precepts of the law ; but it was his special duty, imposed by the law, to reinscribe the judgment in question when required by a party in interest to do so."* In the instant case it was the special duty of the Register of Conveyance to deliver a correct and truthful certificate to the notary, Laiser, when so requested by him ; made so by two sections of the Revised Statutes, 2528, 2529, which, for a failure on the part of the notary to demand, inflicted on him, simply the servant of the parties, a very heavy penalty.

The plea of prescription of one year was properly overruled.

During the trial in the lower court, Albert H. Brown was sworn as a witness, and defendants objected on the grounds that, as the judgment sought was for his wife, under allegations that she had suffered damages by the unlawful act of defendant, Penn, the husband was not a competent witness in her behalf. The court permitted the witness to show, on suggestion of counsel, that the claim set up was a community claim., Subsequently, it was admitted by counsel for both

---

* See Cooley on Torts, p. 383 ; Shearman & Redfield on Negligence, § 286 ; Blackstone's Com., Book III [*164], Thompson on Negligence, vol. 2, pp. 825, 827.
French authorities—Troplong, Priviléges et Hypothèques, tome 4, p. 352, on Art. 2197, Code Napoléon ; Locré, La Législation Civile, tome 16, p. 420 ; Laurent on Art. 2197, Code Napoléon ; Paul Pont on same ; Duranton on same ; Bassompière contre Lemarié, 30 juin, 1810, Journal du Palais ; Mariette, c. ref. 2, Dec. 1816.—Reporter.

parties that the claim set up was one belonging to the community. Under these circumstances the court is not called upon to pass on the objections taken by defendants, the same being waived by their subsequent admission.

At the same time, therefore, of this purchase by Mrs. Brown, there existed between her and her husband a community of acquets and gains, and the fact that the title was executed in her name, did not change that condition; flowing from this condition, undoubtedly the present action against the Register of Conveyances and his sureties is founded upon a claim due the community.

It is for this reason that the court is asked to determine that no cause of action has been shown, and no capacity in the wife to sue, for a wife cannot sue for a debt due the community; and when a wife sues and seeks a judgment on a claim disclosed by the evidence to be a community claim, the suit must be dismissed.

An examination of the petition shows that this is an action addressed to the late Fourth District Court for the parish of Orleans, as the petition of Sarah Magdelina Phister, wife of Albert Henry Brown, *and of the said Albert Henry Brown*, both residing in the city of New Orleans.

This, in connection with the judicial admission that this action is based on a claim due the community, at once determines the petitioner, if any doubt could exist from the language used. The wife is joined with the husband, the head and master of the community. Her name adds nothing to and takes nothing from the quality or importance of the husband's demand.

"It may be disregarded as surplusage." 12 La. An. 333; 29 La. An. 213.

Disregarding, therefore, the use of the name of Mrs. Brown as petitioner, the husband remains seeking a judgment in favor of his wife. There is no law which prohibits the placing the title to community property in the wife's name. La. C. C. 2399, 2400, 2402.

Brown vs. Penn et als.

It is, therefore, difficult to see why a husband, in a suit which he brings to recover a community claim, cannot ask to have it placed in the name of his wife, particularly a monied claim, which, under our law, is a movable, and which, under Art. 2404, he can dispose of by gratuitous title. The fact of placing it in the name of his wife did not affect its community distinction, nor were defendants in any manner injured thereby; it was the exercise of a caprice on the part of the husband, void of injury, and not opposed to law. The husband could certainly dispose of whatever he realizes from this cause to his wife, as he could to a stranger.

In Rawle, for the use of, etc , v. Skipwith, 19 La. 210, passing upon an exception that the suit should have been brought by Rawle for his own use and benefit, the Supreme Court say: " The legal title is in Rawle, and he may sue for whom he pleases, in the same manner he might make any disposition he chose of the funds after judgment, if he had sued in his own name."

In interpreting C. P., Art. 15, the same principle is announced—2 La. 265; and the jurisprudence is established by numerous authorities.

In 18 La. An. 484, where a suit was brought by a firm for the use of another and discontinued by the firm, it was held that the party for whose use it was brought passed out of court with the dismissal of the suit, for the reason that the court found that the firm, Moore & Browder, had the right to sue; they had control of the suit; dismissing the suit on their own motion left the other party, Alter, without legal right or authority to prosecute to judgment for *his own* benefit, because, quoting 19 La. 207, " the practice of suing for the use of another is based upon the ground, that whoever has the legal title and can sue for himself, may sue for the benefit of whom he pleases, in the same manner as he might dispose of the funds after judgment, if he sued in his own name." It must be recollected that in this case the muniment of title stood in the name of the wife. She purchased; she demanded the

certificate from the defendant; she was sued and against her was the judgment rendered, setting aside her possession, her husband simply appearing, aiding and assisting, or rather permitting proceedings involving community interests, to be conducted by his wife in her own name, and by all of which he has become legally and irrevocably bound; and, yet, at no time was there any other interest involved than that of the community of acquets and gains existing between Brown and his wife. There is no objection to the form of proceeding adopted in this controversy nor to the form of relief prayed for.

It is true that the sale to Mrs. Snowden was a "*vente à rémére*"; that her title was defeasible at the date of plaintiffs' entry, January 17th, by the payment of $266.20, and while Mrs. Brown, when she discovered the prior sale, might have paid this amount, there is no reason why she should have done so. It is not so clear that Mrs. Brown undertook a hopeless litigation or provoked an unnecessary suit. The reasons and judgment of the court that heard and determined the controversy regarded it as one of great interest; he required that Mrs. Brown should be reimbursed by Mrs. Snowden the sum expended in making additions to the property. We cannot hold that the course pursued was improper or reckless.

We do not consider, however, that the plaintiffs have shown a right to receive more than four hundred and forty-five dollars and thirty cents; this amount, includes the purchase price, costs of sale and the costs of suit to maintain possession, and results after allowing one hundred and twenty dollars, amount received by plaintiffs. The other claims are too remote and consequential in their nature and not properly chargeable as damages resulting from the issuing of the improper certificate, except possibly the item for improvements and repairs; these, however, plaintiff in this case demanded from Mrs. Snowden in the litigation had with her, and the claim was liquidated and allowed her by the judgment.

To allow them again in this cause would be to permit a double recovery of the same sum.

It is, therefore, ordered that the judgment of the lower court be reduced from six hundred and ninety-seven dollars and eighteen cents to the sum of four hundred and forty-five dollars and thirty cents, with legal interest from judicial demand, and that in other respects it be affirmed. Costs of appeal to be paid by plaintiffs; those of the lower court by defendants.

## ON APPLICATION FOR REHEARING.

McGLOIN, J.—We are asked to grant a rehearing in this case, on the ground, that the objection urged to the capacity of Mrs. Brown to sue in this case, was one of pleading; that she could not, appearing to enforce pretended rights of a paraphernal character, convert the demand into one for a community claim, said causes of action being distinct and contradictory. Were this really the character of the issues presented, we should have granted a rehearing, as we do not desire to be placed in the attitude of holding that a woman, who distinctly alleges that a certain right is paraphernal in its nature, can, in face of such allegations, show it to be one in community, and recover accordingly.

What we did declare was, that it is competent for the husband to place a community claim in the name of his wife, if he so desires, and to sue for it as such, and have the judgment rendered for her use

The petition in this case is a joint one by husband and wife. It nowhere declares that the debt is the paraphernal property of the latter, and does not even annex, or make the act of purchase, with its declarations, a part of itself.

It is true, that it does not expressly declare that the claim was a community one, but, even if the presumption in this connection, created by law, did not supply this omission, defendant might have forced plaintiffs to be more explicit, and then, had the declaration of separation, and of the paraphernal character of the claim been made, their position would have been maintained by this tribunal.

Appellants complain that this Court held, that the admission by them made in the trial below, that the object of the demand belonged to the community, changed the nature of the cause of action, or waived objection thereto.

Such was not the view of the Court. Had the petition been one upon a claim alleged to be the separate property of the wife, and, in pursuance of an objection, properly made, it had been shown by admissions, or otherwise, that the claim was not the paraphernal property of the wife, but belonged to the community, this would be but establishing the verity of the objection, instead of constituting a waiver thereof. In this case, however, the petition has no such allegation, and the objection that we considered as being waived by the admission, in question, was not one of pleading, but one affecting the competency of the husband to testify.

Rehearing refused.